## S10A1104. GALVIN v. GALVIN.

(702 SE2d 155)

BENHAM, Justice.

Appellant Thomas R. Galvin filed in this Court an application for discretionary review of a trial court order granting him a downward modification of his child support obligation and an increased amount of visitation with the parties' child. We granted the application pursuant to OCGA § 5-6-35 (j) because appellant father had a statutory right to appeal directly an order entered in a child custody modification action filed after January 1, 2008. OCGA § 5-6-34 (a) (11).

Appellant and appellee Wendy L. Galvin were married in 2002 and were divorced in May 2007 by a final judgment and decree that awarded them joint legal custody of their 30-month-old child, gave appellee mother primary physical custody of the child and decision-making authority, and required appellant father to pay monthly child support of $971.68. In February 2008, father sought downward modification of the child support award on the grounds that he was no longer employed and was receiving unemployment benefits and that mother's income had increased. Father amended his petition in November 2008 to seek modification of the divorce judgment's child custody award. In December 2009, the trial court determined there was a material change in financial circumstances that warranted a downward modification of the child support award to $692, finding that mother's monthly income had increased to $2,500 and imputing to father monthly income of $2,500 based on father's training and experience as a paralegal and the trial court's finding that father had failed to show efforts to obtain employment and was choosing not to work.[1] The trial court found no material change in circumstances to warrant a change in the custodial arrangement, but granted a modification of visitation and parenting time after finding that a parenting plan submitted by appellee mother was in the best interests of the child.

1. Citing OCGA § 19-6-15 (j), father contends the trial court erred when it did not make the reduction in father's monthly child support obligation retroactive to February 2008, the month in which father filed the petition for modification. The statute provides: "(1) In the event a parent suffers an involuntary termination of employment, . . . then the portion of child support attributable to lost income **shall not accrue** from the date of the service of the petition

---

[1] In the parties' 2007 judgment of divorce, the trial court found that father, then employed as a paralegal, had a monthly income of $3,144 and mother had a monthly income of $1,140. In its December 2009 order, the trial court found father had been unemployed from July 2007 through December 2009 and was receiving monthly unemployment benefits of $1,443.

for modification, provided that service is made on the other parent." (Emphasis supplied.)

The modification of a support obligation payable in installments pursuant to a judgment is effective no earlier than the date of the judgment of modification. *Hendrix v. Stone*, 261 Ga. 874 (1) (412 SE2d 536) (1992). Contrary to father's assertion, OCGA § 19-6-15 (j) does not make a downward modification of child support retroactive. The statute is not applicable to an action in which nothing but modification of child support is sought. Rather, the statute provides that child support due before entry of the modification order (and presumably not paid in full due to the obligor spouse's "involuntary adversity") does not accrue, to the extent the child support obligation is based upon the parent's income from employment from which the parent has been involuntarily terminated.[2] The case before the trial court sought nothing more than a downward modification of child support. Since OCGA § 19-6-15 (j) does not provide for the retroactivity of a downward modification of child support, the trial court did not err in failing to make the downward modification of child support retroactive to the date appellant sought said modification.

2. Father next argues that his presentation of a notice of unemployment benefits and the lack of evidence that he voluntarily terminated his employment precluded the trial court from imputing his income, and that the trial court did not have sufficient facts to support imputing father's income. Father's premise is inaccurate, as evidence that a parent suffered an involuntary loss of employment is insufficient to prevent a trial court from imputing income to the unemployed parent when, as here, there is evidence of prolonged unemployment and a dearth of evidence of the parent's efforts to obtain employment. Compare *Herrin v. Herrin*, 287 Ga. 427, 429-430 (696 SE2d 626) (2010). While the mere fact that earning potential exceeds actual earnings is not enough to impute income (*Bankston v. Lachman*, 286 Ga. 459 (2) (689 SE2d 301) (2010)), the trial court cited father's previous skilled employment and his training therefor, as well as the fact that father had earned more money when he was employed as a seasonal employee of a discount department store than he was receiving in unemployment benefits. The trial court did not err when it imputed income to father.

3. The trial court's modification order states that mother acknowledged she currently earns $2,500 a month. Father maintains

---

[2] The statute is also applicable if a parent has suffered "an extended involuntary loss of average weekly hours, is involved in an organized strike, incurs a loss of health, or similar adversity resulting in a loss of income of 25 percent or more. . . ." OCGA § 19-6-15 (j) (1).

the figure was derived from mother's base salary as a hairstylist and did not include tips, and contends the trial court erred when it failed to account for tips mother earned. However, mother's domestic relations financial affidavit filed February 2009 and introduced into evidence by father at the parties' November 2009 hearing shows that mother claimed a monthly salary and wages of $2,260.60 and tips of $140, for a total of $2,400.60. Thus, father's enumeration of error is without factual basis.

4. Father complains the trial court acted arbitrarily and capriciously when, after modifying downward father's child support obligation, it did not modify downward father's obligation with regard to the child's medical and dental insurance premiums and uninsured healthcare expenses.[3] The child support addendum to the trial court's modification order states that no modification of the health and dental insurance requirements was made because there was no evidence presented on the subject, and continues to require father to pay 74% of the child's healthcare expenses not covered by insurance. The trial court was authorized to allocate the uninsured healthcare expenses at a ratio other than the parties' pro rata share of the child support obligation under OCGA § 19-6-15 (b) (10) and (h) (3) (A), which require allocation of uninsured healthcare expenses based on the pro rata responsibility of the parents **or** as otherwise ordered by the court. We see no abuse in the trial court's exercise of discretion in this regard.

OCGA § 19-6-15 (b) (6) requires a pro-rata division of the costs of work-related childcare and health insurance premiums for coverage of the child, and the addition of the pro-rata share of these combined additional expenses to each party's pro-rata share of the basic child support obligation to create the adjusted child support obligation. In the child support addendum incorporated into the parties' 2007 final judgment and decree, the judge presiding over the parties' divorce proceeding found that insurance other than Medicaid was not available to either father or mother and, should it become available to father, father would then obtain health and dental insurance for the child unless such coverage was then being provided by mother. The child support addendum incorporated into the 2009 modification order found that no modification was made to the divorce judgment regarding the provision of health and dental

---

[3] Father contrasts the requirements of the 2007 final judgment and decree of divorce that father pay 74% of the basic child support obligation, 74% of the child's medical and dental insurance premiums, and 74% of the child's medical and dental expenses not paid by insurance, with the 2009 modification that requires him to assume only 50% of the basic child support obligation and does not change his share of responsibility for the child's medical and dental insurance and expenses.

insurance for the child because no evidence on the subject had been presented. Inasmuch as the record reflects the accuracy of the trial court's finding, the trial court did not abuse its discretion in failing to modify the parties' obligation with regard to the provision of health and dental insurance. See *Johnson v. Johnson*, 284 Ga. 366 (4) (667 SE2d 350) (2008) (assignment of parental responsibility for children's health insurance coverage is within the discretion of the trial court).

5. Lastly, father takes issue with the trial court's failure to address father's request to care for the child after the child's pre-kindergarten classes during mother's work week, thereby saving daycare costs currently being paid by mother. The trial court determined that there was no evidence of a material change in circumstances warranting a modification of the current custodial arrangement and adopted mother's parenting plan that extended father's weekend periods of visitation through Sunday, added weekly Wednesday visitations, and expanded father's holiday visitation periods. The trial court did not err in failing to address father's visitation/custodial suggestion.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 1, 2010.

Thomas R. Galvin, *pro se.*

*Bray & Johnson, Roger M. Johnson, Jennifer S. Gill*, for appellee.