FINAL COPY
294 Ga. 687

S13A1625. FRIDAY v. FRIDAY.

HINES, Presiding Justice.

This court granted the application for discretionary appeal of Ronald Friday ("Husband") from the trial court's order on a petition for contempt and a petition for modification of child support in this divorce case. For the reasons that follow, we affirm in part and reverse in part.

Husband and Terri Friday ("Wife") were married on April 17, 1993. The couple were divorced on April 22, 2008, after two children were born of the marriage. Under the final judgment and decree of divorce, which incorporated the parties' settlement agreement ("Decree"), Husband was obligated to pay $2,000 per month in support for the couple's two minor children. At the time of the divorce, Husband's annual income was approximately $180,000. Husband was involuntarily separated from his employment in September 2010; as a severance package, he continued to receive his monthly salary until December 2010, as well as a pro rata bonus. During this period, Husband continued to pay his child support obligations as set forth in the Decree.

On December 1, 2010, Husband filed a petition for modification of child support due to involuntary loss of employment in accordance with OCGA § 19-6-15 (j).[1]  He contemporaneously filed a child support worksheet which calculated a new monthly support obligation of $179, based upon an income from unemployment benefits of $1,320 per month.  On December 15, 2010, Husband began making monthly child support payments in the amount of $179.

Wife subsequently filed a petition for contempt due to Husband's failure to pay child support as directed in the Decree.  During a hearing, Husband testified that he was looking for work, would not accept a job offer at a salary

---

[1] OCGA § 19-6-15 (j) provides:

(1) In the event a parent suffers an involuntary termination of employment, has an extended involuntary loss of average weekly hours, is involved in an organized strike, incurs a loss of health, or similar involuntary adversity resulting in a loss of income of 25 percent or more, then the portion of child support attributable to lost income shall not accrue from the date of the service of the petition for modification, provided that service is made on the other parent. It shall not be considered an involuntary termination of employment if the parent has left the employer without good cause in connection with the parent's most recent work.

(2) In the event a modification action is filed pursuant to this subsection, the court shall make every effort to expedite hearing such action.

(3) The court may, at its discretion, phase in the new child support award over a period of up to one year with the phasing in being largely evenly distributed with at least an initial immediate adjustment of not less than 25 percent of the difference and at least one intermediate adjustment prior to the final adjustment at the end of the phase-in period.

of $100,000.00 a year, but would consider a job offer at $120,000.00 a year. In an order entered February 29, 2012, addressing both the petition for modification and the petition for contempt, the trial court found "a substantial change in the income and financial circumstances of [Husband]" warranting a decrease in child support under OCGA § 19-6-15 (j). The court included on the child support worksheet as "other income," an imputed amount of $4,180 per month (roughly half of the $100,000 a year income that Husband testified he would not consider accepting), and the court ordered Husband's modified support amount due to be $1,040 per month. The court specifically found that Husband was able to pay more than $179 per month, found him in wilful contempt for failure to pay child support, and ordered Husband to pay Wife $8,000 instanter in order to purge himself of the contempt and to submit to the court a Qualified Domestic Relations Order regarding Husband's retirement plan assets within 30 days of the entry of the order.

1. Husband contends that it was error for the trial court to impute income of $4,180 per month to him in addition to the $1,320 in monthly unemployment benefits he received. However, the trial court is empowered to impute income for willful or voluntary unemployment or underemployment. See OCGA § 19-

3

6-15 (f) (4) (D);[2] *Brogdon v. Brogdon,*

[2] OCGA § 19-6-15 (f) (4) (D) provides:

**Willful or voluntary unemployment or underemployment**. In determining whether a parent is willfully or voluntarily unemployed or underemployed, the court or the jury shall ascertain the reasons for the parent's occupational choices and assess the reasonableness of these choices in light of the parent's responsibility to support his or her child and whether such choices benefit the child. A determination of willful or voluntary unemployment or underemployment shall not be limited to occupational choices motivated only by an intent to avoid or reduce the payment of child support but can be based on any intentional choice or act that affects a parent's income. In determining willful or voluntary unemployment or underemployment, the court may examine whether there is a substantial likelihood that the parent could, with reasonable effort, apply his or her education, skills, or training to produce income. Specific factors for the court to consider when determining willful or voluntary unemployment or underemployment include, but are not limited to:

(i) The parent's past and present employment;

(ii) The parent's education and training;

(iii) Whether unemployment or underemployment for the purpose of pursuing additional training or education is reasonable in light of the parent's responsibility to support his or her child and, to this end, whether the training or education may ultimately benefit the child in the case immediately under consideration by increasing the parent's level of support for that child in the future;

(iv) A parent's ownership of valuable assets and resources, such as an expensive home or automobile, that appear inappropriate or unreasonable for the income claimed by the parent;

(v) The parent's own health and ability to work outside the home; and

(vi) The parent's role as caretaker of a child of that parent, a disabled or seriously ill child of that parent, or a disabled or seriously ill adult child of that parent, or any other disabled or seriously ill relative for whom that parent has assumed the role of caretaker, which eliminates or substantially reduces the parent's ability to work outside the home, and the need of that parent to continue in the role of caretaker in the future. When considering the income potential of

290 Ga. 618, 620 (3) (723 SE2d 421) (2012).  Although Husband notes that the court did not make written findings regarding the imputation of income, "OCGA § 19-6-15 (f) (4) (D) does not require a trial court to make *written findings* as to why it decided to impute income to a spouse."  See *Bankston v. Lachman*, 286

a parent whose work experience is limited due to the caretaker role of that parent, the court shall consider the following factors:

(I) Whether the parent acted in the role of full-time caretaker immediately prior to separation by the married parties or prior to the divorce or annulment of the marriage or dissolution of another relationship in which the parent was a full-time caretaker;

(II) The length of time the parent staying at home has remained out of the work force for this purpose;

(III) The parent's education, training, and ability to work; and

(IV) Whether the parent is caring for a child who is four years of age or younger. If the court or the jury determines that a parent is willfully or voluntarily unemployed or underemployed, child support shall be calculated based on a determination of earning capacity, as evidenced by educational level or previous work experience. In the absence of any other reliable evidence, income may be imputed to the parent pursuant to a determination that gross income for the current year is based on a 40 hour workweek at minimum wage.

A determination of willful and voluntary unemployment or underemployment shall not be made when an individual is activated from the National Guard or other armed forces unit or enlists or is drafted for full-time service in the armed forces of the United States.

5

Ga. 459, 461 (2) (689 SE2d 301) (2010) (Emphasis in original). A trial court's evaluation of willful unemployment or underemployment may examine "any intentional choice or act that affects a parent's income" in order to determine "whether there is a substantial likelihood that the parent could, with reasonable effort, apply his or her education, skills, or training to produce income." OCGA § 19-6-15 (f) (4) (D). And, a court may consider a parent's past or present employment, as well as ownership of valuable assets. Id. See also *Banciu v. Banciu*, 282 Ga. 616, 617-618 (1) (652 SE2d 552) (2007).

At the hearing on the petitions for contempt and modification of child support, Husband testified that his annual income at the time of the divorce was $180,000, that he had approximately $390,000 in retirement assets, that he had received $7,500 per month in loans from his family in the five months preceding the trial, and that, despite his unemployment, he would not accept any offer of employment that paid $100,000 per year or less. In evaluating the reasonableness of Husband's occupational choices, his past employment, current assets, current monthly receipts, and self-imposed salary restrictions regarding his job search supported a finding that Husband was willfully unemployed or underemployed under OCGA § 19-6-15 (f) (4) (D). "It cannot be said that the

6

trial court did not ascertain the reasonableness of [H]usband's occupational choice simply because it did not make explicit findings in that respect." *Bankston*, supra. This enumeration of error is without merit.

2. Husband contends the trial court erred in finding him in willful contempt for his failure to meet his support obligation, arguing that after December 2010, he paid child support in accordance with OCGA § 19-6-15 (j). However, OCGA § 19-6-15 (j) does not simply authorize a child support obligor who has suffered involuntary loss of income and seeks a downward modification to begin paying what he or she calculates as the new amount of child support; what it does provide is that, should the party seeking the downward modification prevail on a petition seeking to do so, "then the portion of child support attributable to lost income shall not accrue from the date of the service of the petition for modification . . . ." But, the fact that a child support obligor faced with a reduction in income has submitted a petition for modification with a worksheet setting forth a certain amount for child support does not render the resulting income and support figures binding upon the trial court. Rather, the trial court can determine whether the income figure put forth by the obligor is accurate, determine income, and calculate child support

accordingly. And in doing so here, the trial court concluded that a downward modification of child support was appropriate under OCGA § 19-6-15 (j) (1). As the trial court was addressing both a petition for modification and a petition for contempt, it was empowered to not only address the amount of child support due going forward, but also to calculate the amount of child support arrearage. Accordingly, the analysis presented in *Morgan v. Bunzendahl*, 316 Ga. App. 338, 340 (2) (729 SE2d 476) (2012) (physical precedent only), pertaining to OCGA § 19-6-15 (j) (1) is correct; the modification of child support is prospective only, but if a question is presented on a petition for contempt, any amount of arrearages due that would be due under the prior order, but were attributable to lost income, do not accrue from the date of service of the petition. Compare *Galvin v. Galvin*, 288 Ga. 125, 126 (1) (702 SE2d 155) (2010), in which petitions for modification of child support and child custody were before the trial court, but not a petition for contempt.

Under the Decree, Husband was to pay $2,000 per month in child support; after December 15, 2010, he did not do so, paying only $179 per month, or $1,821 less than the original figure.

> "In cases of contempt the trial judge is vested with a discretion in determining whether his orders have been violated and how such

infringements should be treated; and it has been said that this court will not disturb his judgment, unless it appears that he has abused his discretion. [Cits.]" [Cit.]

*Burke v. Burke*, 263 Ga. 141, 142 (2) ( 429 SE2d 85) (1993). Husband submitted a child support worksheet showing a level of income that the court determined was inaccurate. Rather, the court determined that the proper monthly amount of child support was $1,040, a figure $960 less than the original amount. Thus, the trial court necessarily determined that $960 a month was "the portion of child support attributable to lost income" under OCGA § 19-6-15 (j) (1), not $1,821 as Husband claimed. It was not an abuse of discretion for the trial court to find Husband in willful contempt for his failure to meet his support obligation.

3. The trial court ordered Husband to pay $8,000 instanter in order to purge himself of contempt for his child support arrearage, which Husband also contends is error. It is uncontroverted that between December 15, 2010, and the trial court's order of February 29, 2012, Husband paid $179 per month in child support, in accordance with the worksheet submitted with his petition for modification. However, the court determined that the appropriate figure was $1,040 per month. Accordingly, there were 15 months in which Husband

9

underpaid his obligation by $861, for a total underpayment of $12,915. Thus, it was not error for the court to order the payment of $8,000 in order to purge contempt; the purge amount was within the total arrearage due under the existing obligation to pay proper child support, and within the trial court's discretion. See *Johnson v. Johnson*, 284 Ga. 366 (667 SE2d 350) (2008); *McCullough v. McCullough*, 208 Ga. 776, 779 (2) (69 SE2d 764) (1952). Although Husband contends that the court did not specify the reason why it chose the figure of $8,000, such is not necessary. The court did not seek to impose any new obligation and include that debt in the amount due in order to purge contempt, see *Horn v. Shepherd*, 292 Ga. 14, 21 (11) (732 SE2d 427) (2012); *Gay v. Gay*, 268 Ga. 106, 107 (2) (485 SE2d 187) (1997), and there is no error in this regard. *Burke*, supra.[3]

4. Finally, in the final order addressing the contempt petition, the trial court directed Husband to submit a Qualified Domestic Relations Order ("QDRO")[4] in regard to his retirement accounts; Husband contends that this was

___

[3] Although there is no abuse of discretion in the trial court's order as to Husband's responsibility to purge himself of contempt, we note that the order fails to account for payment of the remaining $4,915 of Husband's prior unpaid obligation.

[4] A QDRO
is a "domestic relations order . . . which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or

10

an impermissible modification of the original divorce decree. "'While the trial court has broad discretion to determine whether the decree has been violated and has authority to interpret and clarify the decree, it does not have the power in a contempt proceeding to modify the terms of the agreement or decree.' [Cit.]" *Roquemore v. Burgess*, 281 Ga. 593, 594 (642 SE2d 41) (2007). "The test to determine whether an order is clarified or modified is whether the clarification is reasonable or whether it is so contrary to the apparent intention of the original order as to amount to a modification." *Cason v. Cason*, 281 Ga. 296, 297 (637 SE2d 716) (2006) (Citation and punctuation omitted.). "It is the function of the court to construe the contract as written and not to make a new contract for the parties." *Roquemore*, supra at 595 (Citation and punctuation omitted.).

> This Court has established a "'firm rule . . . against modifying the property division provisions of a final divorce decree.' [Cit.] '(W)e have not allowed trial courts later to compel a party who was awarded a specific asset to sell or otherwise convert that asset in order to comply with some other provision of the decree.' [Cit.]" *Doane v. LeCornu*, 289 Ga. 379, 381 (1) (711 SE2d 673) (2011).

*Jett v. Jett*, 291 Ga. 56, 59 (2) (727 SE2d 470) (2012).

The Decree provides for an equitable division of the parties' retirement

---

a portion of the benefits payable with respect to a participant under a plan" and must meet specific statutory requirements. 29 USC § 1056 (d) (3) (B) (i) (I).
*Appleton v. Alcorn*, 291 Ga. 107, 110, n. 5 (728 SE2d 549) (2012).

assets. And, those assets awarded to Husband included the retirement accounts that were the subject of the trial court's order regarding a QDRO. Thus, ordering that Husband pay child support arrearages from his retirement accounts via a QDRO is a reapportionment of the retirement accounts, constituting a modification of the final decree, and is error. Id. Accordingly, this portion of the trial court's order must be reversed.

Judgment affirmed in part and reversed in part. All the Justices concur.

Decided March 3, 2014.

Domestic relations. Fulton Superior Court. Before Judge Campbell.

Waggoner Hastings, Andrea D. Hastings, Jennifer L. Giles, for appellant.

Jett & Liss, Adam G. Jett, Jr., for appellee.

12