**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 6, 2019**

# In the Court of Appeals of Georgia

A19A0858. BERRY v. BERRY.

MCMILLIAN, Presiding Judge.

We granted the application for discretionary appeal filed by Kelly Randall Berry (the "Wife") of the trial court's order directing her to pay one-half of the amount due at closing on the sale of the former marital residence. Because we find that the trial court's order improperly modified the terms of the parties' divorce decree, we reverse and remand the case to the trial court for further consideration.

In 2008, the trial court granted a final judgment and decree of divorce, which incorporated a settlement agreement signed by both parties, to the Wife and Darren Heath Berry (the "Husband"). As for the marital residence, the settlement agreement provided that the Wife could remain in the residence for a specified time and that the Husband would be responsible for paying the mortgage. The agreement further

provided that the Husband had the right to refinance the loan if interest rates dropped to a point that it would be "fiscally responsible to refinance the existing mortgage[.]" However, any refinancing "must be completed in such a manner as to fully protect [the] Wife's equity position in the Marital Residence" and "in no event shall [the] Wife be required to go on the mortgage with [the] Husband as a borrower, co-signer, guarantor, or in any other capacity."

Once the Wife vacated the marital residence, the settlement agreement provided the parties three options: (1) the Husband could buy the Wife's interest in the marital residence for $25,000; (2) the Wife could buy the Husband's interest in the marital residence for an agreed upon price; or (3) if neither party exercised these options, the marital residence would be sold, with the Wife receiving the first $25,000 of the net sales proceeds and assuming the risk that the marital residence would not net $25,000. Under the third option, the settlement agreement provided that the marital residence would be listed for sale with a real estate broker or agent and that the list price would be mutually agreed upon by the parties or absent agreement, would be determined by a licensed real estate appraiser.

Sometime in or around 2014, the Husband apparently failed to meet some of the monthly mortgage payments, and in June 2014, he opted to refinance the loan

through a loan modification agreement. By this time, the Wife had vacated the marital residence, and neither the Husband nor the Wife chose to exercise the option to buy the other's interest in the property. Therefore, the parties were required under the settlement agreement to sell the residence.

However, by 2014, the value of the marital residence was below the outstanding mortgage balance, resulting in negative equity. To avoid paying this mortgage shortfall at closing, the Husband proposed in a series of correspondence that the Wife transfer the marital residence to him or to the couple's son, who would then assume the mortgage. The Husband eventually offered the Wife up to $3,600 to agree to his proposal. The Wife rejected these evolving proposals and countered with a proposal that she assume the mortgage on the marital residence and that the Husband pay her $25,000, arguing that the Husband's missed mortgage payments and refinancing increased the mortgage amount, which she contended was a violation of the parties' settlement agreement. Over time, the Wife reduced the monetary demand on her proposal down to $8,000.

During the course of these negotiations, the Husband filed a motion asserting the Wife should be held in contempt for declining his proposed solution to the negative equity issue. In response, the Wife filed a counterclaim arguing the Husband

3

should be held in contempt for increasing the principal amount of the mortgage contrary to the terms of the settlement agreement and that he should be solely responsible for the mortgage deficiency.

After an initial hearing, the trial court entered an interim order directing that the marital residence be sold. After a second hearing on the cross-motions to consider the issue of the mortgage deficiency, the trial court entered a second interim order, finding that the Wife had not acted equitably in refusing to agree with the Husband's proposal that she transfer the marital residence to their son in exchange for the Husband's monetary offer. As a result, the trial court declined to find the Husband in contempt and further declined "to reallocate any portion of the deficiency in the principal balance owed on the existing mortgage between the parties." Instead, the trial court ordered the parties to appear at the hearing with the funds required to complete the closing, which the trial court estimated to be approximately $12,000 each.

The marital residence was subsequently sold to the son for the appraised value of $75,000, which was more than $17,000 below the remaining mortgage balance, and the parties, as sellers, were required to pay a total of $24,851.51 at closing, which included the mortgage payoff and closing costs. The Husband and Wife each paid one

4

half of this amount. In its final order, the trial court refused to reallocate these amounts between the parties and found that they were each responsible for their own attorney fees. This appeal followed.

1. On appeal, the Wife contends the trial court's order erroneously modified the parties' divorce decree by ordering the Wife to pay one half of the mortgage deficiency because their settlement agreement provides that the Husband was responsible for the mortgage debt. We agree.

"[W]hile the trial court has broad discretion to determine whether a divorce decree has been violated and has authority to interpret and clarify the decree, it does not have the power in a contempt proceeding to modify the terms of the decree." (Citation and punctuation omitted.) *Greenwood v. Greenwood*, 289 Ga. 163, 164 (709 SE2d 803) (2011). "The test to determine whether an order is clarified or modified is whether the clarification is reasonable or whether it is so contrary to the apparent intention of the original order as to amount to a modification." (Citation and punctuation omitted.) *Pollard v. Pollard*, 297 Ga. 21, 23 (771 SE2d 875) (2015). "It is the function of the court to construe the contract as written and not to make a new contract for the parties." (Citation and punctuation omitted.) *Friday v. Friday*, 294 Ga. 687, 693 (4) (755 SE2d 707) (2014).

The parties' settlement agreement provides that the Wife was entitled to live in the marital residence after the divorce until August 2015 at the latest, and after she moved out of the residence, she was financially responsible for any damages to the property beyond normal wear and tear. However, nothing in the agreement provided that the Wife was ever to be responsible for any mortgage indebtedness. To the contrary, the settlement agreement provided that the Husband would pay the full monthly mortgage amount while she resided in the residence. The settlement agreement also entitled the Husband to refinance the mortgage so long as he fully protected the Wife's equity interest, and if he chose to refinance the Wife was not to be made a party to that new mortgage. In July 2014, the Husband made the decision to refinance the debt on the marital residence and signed a new mortgage solely in his own name; therefore, as the settlement agreement provided, the Wife was under no legal obligation to repay that loan.

Additionally, the settlement agreement specifically addressed the risk the Wife was to bear with regard to any sales transaction, providing that she bore the risk that the sale would not net $25,000 and that the Husband had no obligation to pay her that amount if it did not. However, nothing in the agreement stated that she also shared in the risk that the sale would not result in sufficient proceeds to cover the mortgage

6

that the Husband took out in his own name. Although the settlement agreement defined the net proceeds of the sale as the amount remaining after the "costs of the sale of the Marital Residence which the sellers agreed to pay as part of the transaction as well as the balance owed on any mortgage that is in effect" were deducted from the gross proceeds, nothing in the agreement requires the Wife to pay any portion of the mortgage balance. Rather, the Husband, individually, agreed to repay the refinanced mortgage on the marital residence, and thus he alone bore the risk that the subsequent sale of the property would not cover the remaining balance. We find, therefore, that the portion of the trial court's order requiring the Wife to assume liability under the Husband's mortgage was an improper modification of the divorce decree.

We note, however, that the settlement agreement does not address the payment of any closing costs associated with the sale of the property, other than the cost of an appraiser, which the parties were to share equally. Therefore, the payment of closing costs was not governed by the final divorce decree, and to the extent that the trial court's order directed the parties to split such costs, it did not violate the divorce decree.

Based on the foregoing, we reverse and remand the case to the trial court for further proceedings consistent with this opinion.

7

2. The Wife also argues that the trial court impermissibly modified the settlement agreement by permitting the Husband to erode the Wife's equity position in the residence by failing to pay mortgage payments and by increasing the principal balance through the refinancing. Although the Wife argues in her appellate brief that the Husband's actions increased the principal balance from to $90,563.41 to $93,391.46, a difference of less than $3,000, the mortgage shortfall in this case exceeded $17,000. Therefore, any addition to the mortgage balance did not affect the Wife's ability to recover equity upon the sale of the property. Moreover, as we have found that the Wife has no obligation to repay the mortgage balance on the marital residence, any violation of the settlement agreement did not result in damages to the Wife. Accordingly, we need not address the issue on appeal.

*Judgment reversed, and case remanded. McFadden, C. J., and Senior Appellate Judge Herbert E. Phipps concur*.

8