A97A0821. GOLD KIST, INC. v. WILSON et al.
(490 SE2d 466)

McMURRAY, Presiding Judge.

This is the third appearance of this case before this Court. Defendant Gold Kist, Inc. appeals once more following the entry of findings of facts and conclusions of law as directed in *Gold Kist v. Wilson,* 220 Ga. App. 426, 428 (1) (469 SE2d 504). See also *Gold Kist v. Wilson,* 213 Ga. App. 154 (444 SE2d 338). The 15 plaintiffs are farmers who were members of the Gold Kist cooperative, each of whom built or modernized facilities to produce either eggs or pullets to be marketed by defendant. This lawsuit resulted after Gold Kist sold its egg processing facility which served the plaintiffs and assigned their production contracts to the purchaser. An overview of plaintiffs' claims and the controverted issues may be obtained by reviewing the previous opinions. *Held:*

1. While we are all aware of the maxim that the cardinal rule of contract construction is to ascertain the intention of the parties, contract construction has been described as a three-step process. The final part of this process is to submit to the jury any ambiguity in the contract which cannot be negated by the trial court's application of the statutory rules of construction. *Richard Haney Ford, Inc. v. Ford Dealer Computer Svcs.,* 218 Ga. App. 315, 316 (1) (b) (461 SE2d 282); *Duffett v. E & W Properties,* 208 Ga. App. 484, 486 (2) (430 SE2d 858). In the first appeal, this Court determined that the sales and production agreements between the parties were "internally ambiguous and . . . also ambiguous when read in conjunction with the Gold Kist membership agreement and Gold Kist's by-laws." *Gold Kist v. Wilson,* 213 Ga. App. 154, 155 (1), supra. This Court concluded that these and other ambiguities could not be resolved without submission to the factfinder and overturned a grant of summary judgment in favor

of plaintiffs while approving the denial of summary judgment to Gold Kist. Id. at 156 (1), (2).

Upon the trial of the case, the trial judge served as the trier of fact. The trial judge's findings of fact will not be disturbed on appeal as long as there is any evidence to support those findings. This Court is not authorized to substitute its judgment for the judgment of the trial court unless the record discloses absolutely no evidence in support of the finding by the trial court. *Macon-Bibb County Indus. Auth. v. Central of Ga. R. Co.*, 266 Ga. 281, 282 (1) (466 SE2d 855); *Wilkins v. Wilkins*, 234 Ga. 404, 405 (216 SE2d 302).

This does appear to be a case in which we are unable to discover any evidence in the record authorizing the findings of the trial court on two of the important issues concerning the financial arrangements between Gold Kist and the plaintiffs. The first of these deals with the so-called profits from the sale of the eggs and pullets produced by plaintiffs. The trial court found that Gold Kist was not entitled to withhold any of the money received for the sale of eggs, pullets, or spent hens other than a deduction for certain expendable items provided by Gold Kist including feed, vaccines, medicine, disinfectant, and supplies. The trial court's formula also permitted Gold Kist to deduct for the day-old chicks provided to pullet producers and for pullets provided to egg producers.

The trial court's accounting is defective for a number of reasons. First, the trial court has not correctly calculated the profits to Gold Kist since its formula fails to reflect the cash payments made by Gold Kist to the plaintiffs. This includes, for example, the amount Gold Kist paid the plaintiffs on a periodic basis prior to a flock becoming productive and the payments made to the egg growers for each dozen eggs produced.

Nonetheless, putting aside these accounting problems, when there was a profit to the egg division as calculated by Gold Kist, it was proportionately assigned to each plaintiff's equity account. A portion of that sum was paid out to each plaintiff and the remainder retained as "notified equity" assigned proportionately to each plaintiff or other farmer member of the cooperative.

The trial court found that Gold Kist is entitled to hold in the equity accounts only the sums it has earned as its profits and is not entitled to withhold any money received for the sale of eggs, pullets or spent hens above the allowable deductions noted above. The trial court's view leaves unanswered the obvious question of where and how Gold Kist will make a profit or from what source it will acquire the funds to conduct operations under this formula. Plaintiffs' own expert on cooperatives testified that the ability to retain profits was necessary for a cooperative to survive and that he knew of no cooperative which did not.

The plaintiffs argue that the notified equity or profits of Gold Kist were to be generated by sales of feed, vaccines, medicine, disinfectant, and other supplies provided to the plaintiffs. Yet, as plaintiffs' argument acknowledges, Gold Kist was contractually bound to provide these items at a reasonable price. This theory is completely unsupported by any evidence in the record and presented a further question as to whether any profits on the sales of such supplies at reasonable prices would reasonably be anticipated to provide the funding for operation of the egg division of Gold Kist. The uncontroverted testimony is that no significant profits were generated by the sale of these supplies to farmers such as plaintiffs.

The practice at Gold Kist was to retain the notified equity for 20 years. The redemption of notified equity at the end of that period of time is referred to as the "revolving" of the notified equity, the term "revolving" reflecting that the payments when made related to the amount retained in a particular prior year. Provision was made under this practice to permit farmers withdrawing from the cooperative to immediately receive a disbursement of their notified equity in which case the amount of the payment was determined by discounting the amount of the notified equity to its present value. These sums were received by plaintiffs, and the matter being contested with regard to the equity accounts is the difference between the face amounts of the notified equity and the discounted present value of that amount.

The fatal flaw in the trial court's finding, that plaintiffs were entitled to all of the profits from Gold Kist's sale of the eggs and that Gold Kist should have paid to plaintiffs the full undiscounted amount of notified equity, lies in the fact that this position is contradicted by the uncontroverted evidence presented at trial including the testimony of plaintiffs, who one after one, testified that they understood that they would not be paid all of the profits from the egg sales, and that the portion of the profits not distributed would be retained in the notified equity accounts, that the equity accounts would be held for a lengthy period by Gold Kist, and that early withdrawals from the equity account would be discounted.

Gold Kist did not sell pullets. The pullets produced by a number of the plaintiffs were simply delivered to the farms of the egg producers. There is no established market for the sale of pullets. The trial court in effect created a fictional sale of the pullets and calculated the profits thereof in a manner comparable to its calculation of the profit on egg sales with the exception that in this instance the trial court allowed Gold Kist a deduction for the cash payments made to the pullet producers. Nonetheless, the determination of profits due the pullet producers is subject to the same criticisms as that related to the egg producers. These plaintiffs also expected the retention of profits

in the notified equity accounts.

Next, we reach the trial court's conclusion that even if Gold Kist were entitled to withhold funds in the equity accounts, it cannot terminate its relationship with the plaintiffs and retain the equity. The contested point is whether plaintiffs are entitled to receive the face value of these accounts or the value as discounted to present value. The trial court determined that plaintiffs are entitled to face value and stated two theories in support of this proposition. One of these theories is that there has in effect been a dissolution of Gold Kist in relation to these plaintiffs. The by-laws of Gold Kist provide that equity be distributed at face value in the event of a dissolution. However, this provision is clearly inapplicable since Gold Kist has not been dissolved and there are other provisions of the by-laws which govern termination of membership and provide for the payment to the former members of the discounted present value of their equity accounts.

The trial court also stated a theory based on the supposition that the equity funds were advanced to be used for plaintiffs' benefit in providing capital for the egg operation, that the purpose for which the funds were advanced had ended, and that the plaintiffs who advanced the money are entitled to its return. See *Atlanta Motorcycle Sales v. Fulton Nat. Bank,* 147 Ga. App. 297 (248 SE2d 558); *Fed. Employees Credit Union v. Capital Auto. Co.,* 124 Ga. App. 144 (183 SE2d 39); and *Brooks v. Holman,* 121 Ga. App. 720 (175 SE2d 131). However, this theory is inconsistent with the contingent nature of plaintiffs' interest in the equity accounts. "Redemption of patronage allocations is a matter within the discretion of the directors of the co-operative. It is well established that 'equity credits allocated to a patron on the books of a co-operative do not reflect an indebtedness which is presently due and payable by the co-operative to such patron. Such equity credits represent patronage dividends which the board of directors of a co-operative, acting under statutory authority so to do, has elected to allocate to its patrons, not in cash or other medium of payment which would immediately take such funds out of the working capital of the co-operative, but in such manner as to provide or retain capital for the co-operative and at the same time reflect the ownership interest of the patron in such retained capital. Equity credits are not an indebtedness of a co-operative which is presently due and payable to the members, but represent an interest which will be paid to them at some unspecified later date to be determined by the board of directors. . . ." *Howard v. Eatonton Co-Operative Feed Co.,* 226 Ga. 788, 791 (2) (177 SE2d 658).

We conclude that the trial court erred in concluding that plaintiffs were entitled to all of the profits from Gold Kist's sale of eggs and pullets. We also conclude that the trial court erred in concluding

that Gold Kist should have paid the full face amount of notified equity to plaintiffs. Neither conclusion is authorized by the evidence presented at trial and to the extent that the judgment of the trial court is predicated on these erroneous conclusions it must be reversed.

2. The trial court did not err in concluding that the production contracts between Gold Kist and the plaintiffs were unassignable personal services contracts. In *Gold Kist v. Wilson*, 213 Ga. App. 154, 156 (2), supra, this Court recognized that "a confidential relationship plainly existed between the parties to this litigation. . . ." Contract rights involving a relation of personal confidence between the parties cannot be transferred by one of the parties to the contract without the consent of the other. *Decatur North Assoc., Ltd. v. Builders Glass*, 180 Ga. App. 862, 865 (350 SE2d 795); *Cowart v. Singletary*, 140 Ga. 435, 440 (5), 446 (79 SE 196). Phrases in the production contracts which contemplated an assignment thereof did not amount to a consent to an assignment of those contracts by Gold Kist.

3. The trial court erred in awarding damages on the individual claim of James Crews. This plaintiff entered into a production contract with Gold Kist shortly before its sale of the egg processing facility. Under the contract, Gold Kist was to deliver 125,000 pullets at an approximate age of 18 weeks. In fact Gold Kist provided only 6,000 pullets while an additional 120,000 molted chickens were supplied by the purchaser of the processing plant. The gist of this claim is that the young pullets called for in the contract would have remained productive for a greater length of time because they had the potential for a second egg laying cycle if the flock was molted. However, because the production contract granted Gold Kist the sole option to molt the birds, this plaintiff had no contractual right to keep the flock beyond the period of the initial egg laying cycle. Indeed, the 6,000 pullets which were provided by Gold Kist were removed after the initial laying cycle.

Plaintiffs' only response to this enumeration of error is to rely upon the law of the case rule, OCGA § 9-11-60 (h), and the opinion in *Gold Kist v. Wilson*, 213 Ga. App. 154, supra. However, that earlier opinion does not state a holding that a jury question is presented as to whether Gold Kist breached its contract with James Crews.

4. Next, Gold Kist contends that the trial court erred in awarding contract damages on Neil Hampton's and H. J. Murray's individual tort claims based on theories of fraud or negligent advice. Gold Kist argues that the trial court erred by allowing plaintiffs to recover benefit of the bargain damages under a tort cause of action. *Sofet v. Roberts*, 185 Ga. App. 451 (364 SE2d 595); *Chrysler Corp. v. Taylor*, 141 Ga. App. 671 (234 SE2d 123). The line of cases cited by Gold Kist are related to the "economic loss rule" which prevents recovery in tort

when a defective product has resulted in a loss. *Bates & Assoc. v. Romei*, 207 Ga. App. 81, 83 (4) (426 SE2d 919). Unlike the cases relied upon by Gold Kist, these claims do not arise from the breach of a duty growing out of a contractual relationship. We find no authority for the application of the principle argued by Gold Kist to a claim which is entirely independent of any contractual duty. Additionally, the trial court's order does not reveal the measure of damages used in reaching the judgment on these claims, and we reject the supposition that it may be inferred from the evidence which is recited as having been considered by the trial court in reaching the judgment. This enumeration is without merit.

5. The trial court did not err in denying Gold Kist's motion for involuntary dismissal. The decision in *Gold Kist v. Wilson*, 213 Ga. App. 154, supra, determined that there were material issues of fact requiring resolution by a trier of fact. There is no suggestion of any significant change in the evidentiary posture of the case since that decision. Therefore, the former ruling of this Court remains binding as the law of the case. OCGA § 9-11-60 (h); *McLean v. Continental Wingate Co.*, 222 Ga. App. 805, 807 (1) (476 SE2d 83).

*Judgment affirmed in part, reversed in part, and remanded with direction to enter final judgment consistent with this opinion. Smith, J., concurs. Beasley, J., concurs in the judgment only.*

DECIDED JULY 16, 1997 —
RECONSIDERATION DENIED JULY 31, 1997 —

*Alston & Bird, Jay D. Bennett, Richard R. Hays, Kenneth D. Steele*, for appellant.
*Gibson & Spivey, Douglas L. Gibson*, for appellees.