A02A1225. GOLD KIST, INC. v. MOODY et al.

(575 SE2d 509)

POPE, Senior Appellate Judge.

This is the fifth appearance of this case before this Court.[1] Gold Kist, Inc. is a Georgia agricultural cooperative, and the plaintiffs are former co-op members who were under individual egg production contracts until 1989, when Gold Kist assigned the contracts to another company. The underlying issue in this case is whether the plaintiffs were entitled to an immediate payment of all profits Gold Kist made in selling the plaintiffs' eggs or whether the co-op was entitled to retain a portion of the profits as "notified equity," and actually pay out those profits 20 years later.

The trial court originally ruled that Gold Kist was contractually required to pay out all the profits to the plaintiffs, but this Court reversed in its third opinion in this case, *Gold Kist v. Wilson,* 227 Ga. App. 848 (490 SE2d 466) (1997).[2] The Court held that the trial court erred in finding that Gold Kist should have paid the full face amount of the notified equity to the plaintiffs. But the Court affirmed the trial court's holding that the egg production contracts were for personal services, and thus that they could not be assigned without the plaintiffs' prior consent. Therefore, the plaintiffs were entitled to recover the profits they would have been paid absent the assignment. The case was remanded for further proceedings.

On remand, the trial judge found "that there were other bases of liability which each independently supported an award of the same damages." *Gold Kist v. Wilson,* 247 Ga. App. 107, 111 (542 SE2d 126) (2000). The trial court found three different theories to support the original damage award and so reaffirmed the award on that basis. In its fourth appellate decision in the case, this Court found that the trial court had exceeded its authority in entering additional findings

---

[1] An overview of plaintiffs' claims and the controverted issues may be obtained by reviewing the four earlier opinions in this case.

[2] In the first *Gold Kist* opinion, this Court held that material issues of fact remained, reversed the trial court's grant of summary judgment to plaintiffs, and affirmed the denial of summary judgment on other issues. *Gold Kist v. Wilson,* 213 Ga. App. 154 (444 SE2d 338) (1994). The case came up again following a bench trial in which the trial court awarded the plaintiffs over $2,350,000 in compensatory damages. We remanded the case to the trial court for entry of appropriate findings of fact and conclusions of law. *Gold Kist v. Wilson,* 220 Ga. App. 426 (469 SE2d 504) (1996).

of fact and conclusions of law to support the court's damage calculation and had not followed the holding in *Gold Kist III*.[3]

On remand, the case was assigned to a new judge when the original trial judge became seriously ill. The new judge simply presumed that the original judge had already discounted the profits to present value based upon the theory that trial courts are presumed to faithfully and lawfully perform their duties, and issued an award for the same damages.

1. Gold Kist asserts that the trial court erred in presuming that the original judge had followed the law because, the corporation argues, the original judge never reduced the award to present value as directed by this Court in *Gold Kist III*. We agree.

In affirming the original trial judge's award, the current trial judge relied upon the presumption that "a judge is presumed to know the law and presumed to faithfully and lawfully perform his duties," citing *Johnson v. Equicredit Corp.*, 238 Ga. App. 380 (1) (517 SE2d 353) (1999). But "the assumption that a trial court has correctly applied the law is a theoretical one, and has no place where it affirmatively appears to the contrary." (Footnotes omitted.) *McBride v. State*, 247 Ga. App. 767, 770 (1) (545 SE2d 332) (2001). And we find that this presumption does not apply under the facts of this case because the original trial judge's error is apparent on the face of the record.

The original trial judge's October 16, 1995 opinion found that the plaintiffs were entitled to retain all their profits and should be paid the face value of their equity accounts. Gold Kist appealed asserting that they were entitled to retain notified equity and, therefore, that the awards should be discounted to present value to account for the fact that most of the amounts in the equity accounts would not have been paid until the 20-year notified equity period had expired. As this Court's opinion in *Gold Kist III* explained: "The contested point is whether plaintiffs are entitled to receive the face value of [the equity] accounts or the value as discounted to present value. *The trial court determined that [the] plaintiffs are entitled to face value. . . .*" (Emphasis supplied.) 227 Ga. App. at 851 (1). Thus, this Court recognized in *Gold Kist III* that the trial court had not discounted its prior award to present value. The Court then found that the original trial court erred in reaching the conclusion that the plaintiffs should recover all profits and equity: "We conclude that the trial court erred in concluding that plaintiffs were entitled to all of

---

[3] Although this Court previously referred to the prior decisions in this case as *"Wilson" I, II,* or *III,* the name of this appeal does not include the name "Wilson." Accordingly, for clarification, this opinion will refer to the prior opinions by the designation *"Gold Kist" I, II, III,* or *IV.*

the profits from Gold Kist's sale of eggs and pullets. We also conclude that *the trial court erred in concluding that Gold Kist should have paid the full face amount of notified equity to plaintiffs.*" (Emphasis supplied.) Id. at 851-852. Thus, there can be no dispute that following *Gold Kist III*, the awards should have been discounted to present value.

But on remand, the original trial judge simply awarded the same damage amounts, relying upon alternate theories to justify the awards. This Court ruled in *Gold Kist IV* that the trial court could not find new bases to support the original award and that the judge "failed to carry out the mandate of this Court." 247 Ga. App. at 112. *Gold Kist IV* then remanded the case "for entry of [a] final judgment consistent with [*Gold Kist*] *III*." Id. Thus, we find that it is apparent from the record that the original trial judge never discounted to present value his original award of the face value of the notified equity accounts.

The plaintiffs assert, however, that footnote 4 in *Gold Kist IV* is inconsistent with this conclusion because it left open the possibility that the award had already been discounted.[4] We disagree. That footnote first makes clear that any award of notified equity must be discounted to present value. 247 Ga. App. at 112, n. 4. The Court stated that if the award had not been discounted, it should be modified to reflect the discounted value. The footnote then went on to provide the formula to be applied if the awards already reflected a discount to present value and listed the correct amount of the awards based upon that assumption. Id.

But the issue of whether the prior award had been discounted was not squarely before this Court in *Gold Kist IV*, as it was in *Gold Kist III*. Thus, footnote 4 of *Gold Kist IV*, though an attempt to aid the trial court in making its final judgment, cannot be interpreted as contradicting the clear holding and mandate of *Gold Kist III*.

Accordingly, we reverse and remand the case back to the trial court for entry of a final judgment consistent with *Gold Kist III*, that is, an award that reflects the value of the equity accounts discounted to present value.

2. Gold Kist next argues that the trial court erred in failing to reduce the award to plaintiff H. J. Murray by the amount of $78,640.55. The corporation asserts that this portion of the award

---

[4] In addition, the plaintiffs note that the award reflects an amount in excess of the damage evidence presented by Gold Kist's expert and less than the amount presented by their expert. They argue that we can, therefore, assume that the trial court accepted the evidence of their expert, but discounted it to present value. The trial court's order makes no reference to such evidence, however, and we reject the supposition that we can infer from the record before us which expert's conclusions, if any, were accepted by the trial court in calculating damages. See generally *Gold Kist III*, 227 Ga. App. at 853 (4).

reflects the face value remaining in his notified equity account, and that this portion was overturned in *Gold Kist III.* Murray was also awarded tort damages for Gold Kist's negligent advice that it would not sell the egg assets, and Gold Kist argues that his recovery should be limited to that amount.

At some point, Murray requested and received the return of his equity account, and, under the co-op's practice, that return would have been discounted to its present value. See *Gold Kist III,* 227 Ga. App. at 850 (1). The original trial judge found that the face value of Murray's equity account was $106,636.37 and that he received $27,995.82 of that amount upon his request. Because the trial judge erroneously found that the plaintiffs were entitled to the full face value of the account, he determined that Murray was still due $78,640.55 from his equity account. The trial court also found that Murray was entitled to tort damages and awarded him total damages of $148,000. The trial judge's order makes clear that this total amount included the $78,640.55 he calculated as the remaining face value of Murray's equity account. The order provides:

> The principal of damages set out in [paragraph 13 relating to Murray's equity account is] included within the damages set out in paragraph[ ] . . . 18 hereof [awarding Murray his total damages]; and payment of the amounts set out in paragraph[ ] . . . 18 shall discharge the principal of the damages set out in [paragraph 13 relating to the equity account].

As Gold Kist correctly notes, *Gold Kist III* held. that the plaintiffs were not entitled to recover the face value of their equity account. Therefore, Murray was not entitled to recover the $78,640.55 remaining in his equity account. He was entitled only to the present value of that account, which had already been paid to him at the time of his request. Accordingly, we agree with Gold Kist that $78,640.55 should have been deducted from Murray's award.

The plaintiffs again assert that this conclusion is contradicted by footnote 4 of *Gold Kist IV* because that footnote sets out calculations based upon an assumption that the original trial judge had already reduced his award to present value. Based upon that assumption, the footnote stated that the award to Murray would be $148,000. But as discussed in Division 1, although the Court in *Gold Kist IV* did not directly address the issue, we have now held that the original trial judge never discounted his award to present value. Therefore, the calculation in footnote 4, which was meant to cover one of two hypothetical situations, has no application in this case.

*Judgment reversed and remanded. Ruffin, P. J., and Barnes, J., concur.*

*Alston & Bird, Jay D. Bennett, Richard R. Hays, Kenneth D. Steele,* for appellant.
*Gibson & Spivey, Douglas L. Gibson,* for appellees.

