**FIFTH DIVISION
REESE, P. J.,
MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**June 8, 2020**

# In the Court of Appeals of Georgia

A20A0158. SPIRNAK v. MEADOWS.

MARKLE, Judge.

Stephen Spirnak, Jr., appeals from the trial court's order denying his petition for modification of custody and child support. On appeal, he raises numerous claims of error regarding (1) conditions imposed in the parenting plan and with respect to his visitation; (2) the denial of his request to reduce the amount of child support; (3) the calculation of his gross income for purposes of determining child support; (4) the inclusion and calculation of interest on the amount of support past due; (5) the award of attorney fees; and (6) the trial court's adoption of the final order drafted by the respondent. For the reasons that follow, we affirm the trial court's order in all respects except as to the calculation of a parenting time deviation in the amount of child support, the amount of interest owed, and the amount of attorney fees awarded. We

vacate those portions of the order, and remand the case with direction for the trial court to provide sufficient findings to enable appellate review of these issues and to correct a scrivener's error in the child support addendum.

On review of an order modifying a child custody arrangement, "this Court views the evidence in the record in the light most favorable to the trial court's order and will affirm the trial court's decision if there is any evidence to support it." (Citation and punctuation omitted.) *Lowry v. Winenger*, 340 Ga. App. 382 (797 SE2d 230) (2017). We are "mindful that the Solomonic task of assigning the custody of children lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility." (Citation and punctuation omitted.) *Gordy v. Gordy*, 246 Ga. App. 802, 803 (1) (542 SE2d 536) (2000).

So viewed, the record shows that Spirnak and Kathryn Westberry Meadows are parents to a child born in 2009. The parties never married, and Spirnak legitimated the child in 2010. Per the terms of the legitimization and custody order, Meadows retained primary physical custody of the child, and Spirnak was entitled to visitation every other weekend and various holidays. The trial court ordered Spirnak to pay $650 per month in child support, plus a portion of the child's medical expenses and

Meadows's prenatal costs. At the time of the initial custody order, Meadows lived in Savannah and Spirnak lived in Atlanta.

In 2013, Meadows moved out of state, and over the next few years, she and the child resided in Alabama, Maryland, and eventually Florida. At that time, Spirnak began to pay only $450 per month in child support,[1] and started to decrease his visits with the child. In fact, in 2014, Spirnak only exercised his visitation in July, November, and December. In 2015, he exercised visitation in January, April, July, and December. And in 2016, Spirnak only exercised visitation in April.

Between 2011 and 2014, Spirnak had been employed as a marketing and sales person, earning between $55,000 to $67,000 per year until he was laid off in July 2014. Notably, in January 2013, Spirnak was diagnosed with cancer, and he began treatment in 2014. By the time of the hearing on his petition for modification, however, he was no longer receiving treatments and no doctor had placed any limitations on his ability to work. Nevertheless, despite having approximately 15 years of sales and marketing experience, following his lay-off, Spirnak began to work

---

[1] Although Spirnak testified that the parties agreed to reduce the amount of child support in exchange for fewer visits, Meadows denied any such agreement. In any event, parties cannot enter into an enforceable agreement to modify the amount of child support due without an order from the court. *Jackson v. Sanders*, 333 Ga. App. 544, 555 (3) (773 SE2d 835) (2015).

3

only part time as a self-employed tree specialist and ceased making most of his child support payments. In 2015, Meadows filed a claim for recovery of unpaid child support.[2]

In 2016, Spirnak filed the instant petition, seeking to modify the amount of child support he was obligated to pay due to the change in his income, and he requested a modification in the visitation schedule because the child lived in another state. Meadows filed a counterclaim for contempt due to Spirnak's failure to pay child support or his share of the child's medical expenses. She also requested modifications to the custody order to impose an upward deviation in child support due to Spirnak's lack of visitation and to require supervised visits.

During the final hearing on the petition, Spirnak testified that he had significant outstanding debt from his medical bills and cancer treatment, as well as student loans, payments due to the IRS, and credit card debt. He further explained that he had been unemployed for 15 weeks in 2014, and was currently working only part time. He claimed that he earned only $11,890 in 2015 and just over $14,000 in 2016. He had no evidence to support his claims that he had looked for work following his lay-off.

---

[2] Meadows is an attorney.

Additionally, while working part-time, Spirnak moved to a new home. He also attended a variety of sporting events, took vacations, and went to restaurants and bars.

In support of his claim that his financial status had changed, he proffered his list of clients and his calendar showing jobs he had worked, admitting repeatedly that he was a bad bookkeeper and had not kept all his receipts. He had no invoices to show his income or work. He also submitted a financial affidavit in which he listed his gross monthly income for 2017 as $2,220, with monthly expenses to creditors of $1,901. He submitted an amended affidavit in 2018, estimating his annual income at $30,000 to $40,000, and a copy of some hospital bills showing that only a small amount of payment was outstanding, which did not support the amount he claimed at the hearing. He submitted his tax returns from 2015, but not 2016 or 2017. He also submitted a list of checks made in payment of his child support obligations, the total of which was $20,918.97.

Additionally, between 2012 and 2014, Spirnak was arrested several times and pled guilty to family violence battery and nolo contendere to simple battery in connection with an altercation between Spirnak and a former girlfriend. He was arrested again in 2016 on similar charges.

In support of her claim for child support arrearage, Meadows submitted a spreadsheet detailing the amount due and the amount paid, with the interest accrued each year. She calculated the interest as $4,807.47.

Meadows then explained that she was seeking attorney fees due to the need to defend against the petition for modification of support and as a result of the difficulties in obtaining records to establish Spirnak's earnings. She noted that she had filed several motions to compel both Spirnak and his former employers to produce documentation, and that when the employers and Spirnak failed to comply, she had filed motions for contempt.

The trial court denied Spirnak's petition to modify child support and granted Meadows's counterclaim for modification and contempt. Relevant to this appeal, the trial court specifically found that (1) an upward deviation in child support was warranted under OCGA § 19-6-15 (g) and (i) (2) (K) based on Spirnak's failure to exercise visitation; (2) supervised visitation was appropriate under OCGA §§ 19-9-3 and 19-9-7 in light of Spirnak's past instances of domestic violence; (3) Spirnak was in contempt for failing to pay outstanding child support, prenatal expenses, and medical expenses per the terms of the original custody order; (4) Meadows was entitled to interest on the arrearage in the amount of $4,807.47; (5) Spirnak was not

entitled to a retroactive reduction in child support given the lack of any reliable evidence of his income; and (6) Spirnak was not entitled to a downward modification in child support because he was voluntarily underemployed. Accordingly, the trial court awarded Meadows $30,187.48 in outstanding child support and accrued interest of $4,807.47.

The trial court then determined the amount of child support due going forward as $818 per month, imputing income based on the averages of Spirnak's prior employment and imposing a deviation based on Spirnak's lack of visitation. Additionally, in the parenting plan, the trial court imposed the condition that overnight visitation be supervised by Spirnak's mother, and it required Spirnak to provide contact information for his mother and any of his roommates. The trial court further found that Meadows would not be required to incur any additional travel expenses to enable visitation until Spirnak had paid the arrearage in child support due to the financial hardship Meadows experienced as the result of Spirnak's failure to pay, and it specified that the parties could arrange for the child to travel by airplane for visitation once the child reached 14 years of age.

Finally, as to attorney fees, the trial court awarded Meadows $32,000 in fees and expenses under OCGA §§ 19-6-2, 19-6-15, 19-9-3, and/or 9-15-14 due to

7

Spirnak's failure to produce discovery even after being ordered to do so and being held in contempt. The trial court expressly found that Spirnak's petition lacked substantial justification and was frivolous, and that his conduct during discovery unnecessarily expanded the litigation. Spirnak now appeals.

1. In his first enumeration of error, Spirnak argues that the trial court erred in ordering that his visitation with the child be supervised because there was no finding of a change in circumstances, no evidence of any violence toward Meadows or the child, and no agreement from his mother to supervise the visits. We review a trial court's order modifying visitation for abuse of discretion, *Moore v. Moore*, 217 Ga. App. 148, 149 (1) (456 SE2d 742) (1995), and we discern no such abuse of discretion here.

To begin, the trial court was authorized to consider changes in visitation without addressing whether there were changed circumstances. See OCGA § 19-9-3 (b).[3]

---

[3] That statute provides: "In any case in which a judgment awarding the custody of a child has been entered, on the motion of any party or on the motion of the judge, that portion of the judgment effecting visitation rights between the parties and their child or parenting time may be subject to review and modification or alteration without the necessity of any showing of a change in any material conditions and circumstances[.]"

Turning then to the merits of the order for supervised visitation, under OCGA § 19-9-7 (a) (2), where a parent has committed acts of family violence, the trial court may impose the condition that visitation be supervised by another person. Nothing in the statutory language requires that the family violence be against the other parent or the child. See also OCGA §§ 19-9-3 (a) (3) (P) (in determining what is in the child's best interest for custody determinations, the trial court may consider "[a]ny evidence of family violence or . . . criminal history of either parent"); 19-9-3 (a) (4) (B) (trial court can consider harm caused to "another person."). And, as our Supreme Court has explained, changes in visitation necessarily involve considerations of the child's best interest. *Dellinger v. Dellinger*, 278 Ga. 732, 733 (1) (609 SE2d 331) (2004); see also OCGA § 19-9-3 (a).

Here, there was evidence of several prior instances of family violence by Spirnak that enabled the trial court to determine, in its discretion, that supervised overnight visitation was warranted in the child's best interest. *Moore*, 217 Ga. App. at 149 (1); see also OCGA § 19-9-3 (a) (3) (P), (4). Additionally, the record shows that many overnight visits were already supervised by Spirnak's mother, and

9

Spirnak's mother was apparently willing and able to supervise overnight visits.[4] The trial court did not abuse its discretion in imposing the restriction under the facts of this case. See *Moore*, 217 Ga. App. at 149 (1) (no abuse of discretion where trial court ordered visitation to be supervised by grandmother).

2. Spirnak next argues that the trial court erred in making his visitation contingent upon payment of child support or travel expenses. We are not persuaded.

As Spirnak correctly notes, the trial court cannot make his visitation dependant upon his payment of support. *Price v. Dawkins*, 242 Ga. 41, 42 (2) (247 SE2d 844) (1978). But, that is not what the trial court ordered here.[5] Instead, the trial court instructed that, if the arrearage was not paid, Meadows was entitled to prepayment of

---

[4] We note that many of the respondent's exhibits from the final hearing are not included in the record on appeal. We take this opportunity to remind the parties that the failure to ensure completion of the record can leave this Court with no choice but to assume the trial court was correct and affirm. *Kappelmeier v. Prudential Ins. Co. of America*, 306 Ga. App. 58 (1) (701 SE2d 488) (2010); *Moulton v. Wood*, 265 Ga. App. 389 (593 SE2d 911) (2004) ("where the proof necessary for determination of the issues on appeal is omitted from the record, [we] must assume that the judgment below was correct and affirm.") (citations and punctuation omitted); *Griffin v. Travelers Ins. Co.*, 230 Ga. App. 665, 666 (497 SE2d 257) (1998).

[5] Meadows contends that Spirnak cannot challenge provisions of the parenting plan because he did not voice an objection during the hearing and failed to submit his own parenting plan. Although he did not object to the proposed parenting plan, he did object to visitation supervised by his mother.

travel expenses associated with visitation. Nothing in the trial court's parenting plan makes visitation contingent upon payment of child support.

To the extent that Spirnak challenges the provision that he prepay travel expenses, he has not shown error. The trial court found, and the evidence showed, that Meadows bore the bulk of the effort and expense to enable visitation, and that Spirnak had a long history of not paying support. Given this evidence, the trial court did not abuse its discretion in requiring that he prepay his share of the travel expenses until the arrearage was paid. Cf. *Carlson v. Carlson*, 284 Ga. 143-144 (663 SE2d 673) (2008) (trial court was within its authority to order parent to pay travel expenses for visitation); *Stewart v. Stewart*, 245 Ga. App. 20, 21-22 (1) (537 SE2d 157) (2000) (trial court was authorized to order parent to pay half of travel expenses as "unavoidable costs involved with interstate child visitation," and such amount was not the equivalent of increasing child support).

3. In his third allegation of error, Spirnak contends that the trial court placed undue burdens on his right to visitation. Specifically, he points to the conditions that he provide contact information for his mother and his roommates, and that the child could only travel by car for visitation. He further complains that the trial court

dictated the parties' conduct during the exchange for visitation. These arguments are without merit.

In a custody action, a trial court has authority to "make prohibitive or mandatory orders . . . upon such terms and conditions as the court may deem just." OCGA § 9-11-65 (e); *Lacy v. Lacy*, 320 Ga. App. 739, 752 (12) (740 SE2d 695) (2013) (trial court had authority to limit social media posts during custody proceedings). And a trial court has authority to place restrictions on derogatory behavior. *Lacy*, 320 Ga. App. at 752 (12). Here, Spirnak has not shown how the requirements were burdensome, much less unduly so.

First, given our conclusion in Division 1 that the trial court could require that overnight visitation be supervised by Spirnak's mother, it is hardly burdensome to require him to provide her contact information. As to the requirement that Spirnak provide information on his roommates, the testimony at the hearing showed that Spirnak's roommate had a history of drug-related convictions. Spirnak agreed that he would not expose the child to any contact with his roommate. Spirnak has not shown how providing contact information for any roommates is unduly burdensome.

With regard to the mode of transportation for visitation, the trial court heard testimony that the child had never before flown on an airplane by herself and

12

experienced nosebleeds. Moreover, at the hearing, the parties agreed to provide an age at which flying would be appropriate, and Spirnak's counsel stated 14 years old. Spirnak cannot now complain of a restriction that he agreed to. *Sadler v. Rigsby*, 343 Ga. App. 269, 272 (1) (b) (808 SE2d 11) (2017).

Finally, as to regulating contact between the parents during the exchange, the trial court specified that the mother would not be required to park next to Spirnak in the parking lot, and that Spirnak could not withhold the child's belongings until the mother parked where he demanded. There is no merit to Spirnak's contention that this limitation is an undue burden on his visitation. See OCGA § 9-11-65 (e).

4. Spirnak next argues that the trial court erred in refusing a downward modification in child support because it incorrectly determined that he was voluntarily underemployed and ignored that a downward modification was in the child's best interest. He further contends that the trial court erred in determining his gross income without using the self-employment calculator in the child support worksheet. Although we disagree with these contentions, we note that there appears to be a scrivener's error in the child support addendum.

> In the appellate review of a bench trial, this Court will not disturb the trial court's factual findings unless they are clearly erroneous. Rather,

13

we will give due deference to the trial court, acknowledging that it has the opportunity to assess the credibility of the witnesses. As such, the trial court is authorized to resolve conflicts in the evidence.

(Citations omitted.) *Ellis v. Ellis*, 290 Ga. 616, 617 (1) (724 SE2d 384) (2012). With this in mind, we turn to Spirnak's arguments.

a. *Underemployment*

Under OCGA § 19-6-15 (k) (4),

[a]fter hearing both parties and the evidence, the court may modify and revise the previous judgment, in accordance with the changed circumstances, income and financial status of either parent, or in the needs of the child, if such change or changes are satisfactorily proven so as to warrant the modification and revision and such modification and revisions are in the child's best interest.

See also OCGA § 9-6-15 (k) (1). Notably, the trial court is not required to make written findings as to voluntary underemployment. See *Neal v. Hibbard*, 296 Ga. 882, 886 (4) (770 SE2d 600) (2015).

In evaluating willful underemployment, a trial court may examine "any intentional choice or act that affects a parent's income" in order to determine "whether there is a substantial likelihood that the parent could, with reasonable effort,

14

apply his or her education, skills, or training to produce income." OCGA § 19-6-15 (f) (4) (D). Additionally, the trial court may review a parent's previous or current employment." OCGA § 19-6-15 (f) (4) (D) (i); see also *Banciu v. Banciu*, 282 Ga. 616, 617-618 (1) (652 SE2d 552) (2007). And, where the trial court finds that a parent is voluntarily underemployed, it may impute income for purposes of calculating child support obligations. *Friday v. Friday*, 294 Ga. 687, 689-690 (1) (755 SE2d 707) (2014).

Here, the trial court denied Spirnak's petition to modify his child support based on its finding that he was voluntarily underemployed, noting that the only evidence Spirnak submitted to show his attempts to obtain employment were eight online job posts in a three-month period. The trial court also noted that Spirnak had at least 15 years' experience in marketing and sales work, but he was working only part time in seasonal work unrelated to his expertise, and that he maintained his gym membership and traveled on vacation while not making his child support payments. And, the trial court considered that Spirnak did not begin to look for full-time employment after he was laid-off until Meadows filed for child support recovery.

The evidence presented at the hearing supports the trial court's conclusion that Spirnak was voluntarily underemployed. Spirnak had a college degree and had

15

worked in sales and marketing for more than 15 years. His most recent jobs as a sales representative earned him a salary of at least $50,000 from 2010 to 2013. In 2014, he worked part of the year in sales before he was laid off, and he agreed that his income was approximately $4,780 per month. On his state income tax form from 2015, he listed his income as just over $58,000.

In his own testimony, Spirnak admitted that he was "bad with some bookkeeping." He was unable to produce documentation to support his claims of income, and after his lay-off, he was working only part time. In his 2017 domestic relations financial affidavit, Spirnak indicated that he earned about $2,220 per month. In his 2018 affidavit, he assigned his monthly income as $1,848.75, which he later amended to estimate an annual income of between $30,000 and $40,000. Based on all of this evidence, the trial court was within its discretion to determine that Spirnak was able to earn more money than he was currently making, and that he was voluntarily underemployed. See OCGA § 19-6-15 (f) (4) (B) (where parent fails to offer evidentiary support to show change in income for purposes of modifying child support, trial court may impute income); *Friday*, 294 Ga. at 689-690 (1); see also *Jackson v. Sanders*, 333 Ga. App. 544, 551-553 (2) (773 SE2d 835) (2015) (trial court did not abuse its discretion in determining father's income where father failed

16

to submit evidence supporting his claimed amount of income). Moreover, it is the trial court's province to determine the credibility of the witnesses, and where, as here, it found testimony about income lacked merit, we must defer to that finding.[6] *Ellis*, 290 Ga. at 617 (1).

Moreover, Spirnak has not shown how a downward modification of the amount of child support was in the child's best interest, except to argue that he is unable to afford to exercise visitation due to the debt he faces from the arrearage. OCGA § 19-6-15 (k) (4). But nothing in the trial court's order prevents visitation due to the arrearage. And, the record shows that Spirnak was able to afford to take his own vacations while falling behind in his child support and visitation. Therefore, this argument is without merit.

b. *Gross income*

---

[6] In essence, Spirnak simply challenges the trial court's weighing of the evidence and points to the limited evidence in his favor. But this argument ignores that the trial court could consider more than just the few documents Spirnak supplied and could consider a range of other factors to determine if he was voluntarily underemployed. See OCGA § 19-6-15 (f) (4) (D) (i)-(vi) (listing factors such as past and current employment, education, and ability to work).

With regard to Spirnak's claim that the trial court erred when it failed to use the self-employment schedule, we discern no error.[7] When ruling on a petition to modify child support, the trial court must first determine if there has been a change in the parent's income or financial status. *Wetherington v. Wetherington*, 291 Ga. 722, 724-725 (2) (a) (732 SE2d 433) (2012); see also OCGA § 19-6-15 (k) (1). Once the trial court makes that finding, it must consider the child support guidelines to determine the amount of child support. *Wetherington*, 291 Ga. at 726 (2) (a); see also OCGA 9-6-15 (b), (k).

Under the guidelines, the trial court should first determine the monthly gross income of both parents, adjust the gross income where necessary based on factors not relevant here, and then add the adjusted income from each parent together. OCGA § 19-6-15 (b) (1)-(3). This figure is then used to determine the presumptive amount of support under the child support obligation table. OCGA § 19-6-15 (b) (4), (o). After calculating the presumptive amount, the trial court may apply any deviations, credits, or reductions. OCGA § 19-6-15 (b) (5)-(8). Additionally, the amount may be

---

[7] We note that Spirnak failed to put into evidence the self-employment calculations with his child support worksheet.

adjusted based on a number of factors, including the best interest of the child. See OCGA § 19-6-15 (c) (1).

Here, to determine the gross monthly income, the trial court applied the amount Spirnak attributed to his self-employment – $1,848.75 – and imputed additional income based on the finding that he was voluntarily underemployed. Because the trial court made that finding, and imputed income to Spirnak, there was no reason for the trial court to use the self-employment calculator.[8] See *Herrin v. Herrin*, 287 Ga. 427, 428-429 (696 SE2d 626) (2010) ("In certain circumstances, earning capacity rather than gross income may be used to determine child support, and while a party's past income is some evidence of earning capacity, it alone is not conclusive, but must be considered along with other relevant circumstances.") (citation omitted). Essentially, Spirnak disputes the imputed income, but he has not shown how the trial court erred in imputing income based on its finding that he was voluntarily underemployed. Accordingly, this argument does not require reversal.

---

[8] In determining the amount of gross income for self-employment, the trial court may include work done in sales, less reasonable expenses. OCGA § 19-6-15 (f) (1) (B). In this case, the trial court used the amount Spirnak claimed, which took into consideration those expenses.

19

We note, however, that the child support addendum appears to contain a scrivener's error. The addendum indicates that Spirnak's new amount of child support will be $750, to be paid in "two (2) equal installment of Four Hundred Nine and no/100 Dollars ($375.00)." But this figure conflicts with the trial court's order in which it determined that Spirnak's child support obligation would be $818 per month. The $750 figure is consistent with the amount calculated on the child support worksheet. We therefore remand this case for the trial court to correct these errors.

5. Spirnak also argues that the trial court erred in awarding additional support due to his failure to exercise visitation because doing so ignored that his visitation was limited due to financial circumstances. We conclude that, although the trial court was within its discretion to award additional support due to Spirnak's failure to exercise his visitation, the trial court's order is insufficient to enable our review.

We review deviations from the presumptive amount of child support for abuse of discretion. *Hamlin v. Ramey*, 291 Ga. App. 222, 225 (1) (661 SE2d 593) (2008). Under OCGA § 19-6-15 (i) (2) (K) (i), the trial court may increase the amount of support where "visitation rights [are] not being utilizied." See also OCGA §§ 19-6-15 (g) ("The court . . . may deviate from the presumptive amount of child support as set forth in subparagraph (i) (2) (K) of this Code section."); 19-6-15 (b) (8) (K) (court,

20

in its discretion, may impose deviations in support based on parenting time). The trial court's decision must be supported by factual findings and show consideration of the child's best interest. OCGA § 19-6-15 (b) (8); *Jackson*, 333 Ga. App. at 556-557 (4) (deviations require written findings of fact).

Here, the trial court found that Spirnak admitted that he failed to exercise his visitation on numerous occasions between 2013 and 2018. It therefore imposed a parenting time deviation of $100.[9] In doing so, the trial court explained that the presumptive amount of support would be inappropriate because Spirnak "rarely exercises parenting time."

The trial court was well within its discretion to so find given the undisputed evidence that Spirnak rarely visited the child for several years. However, the trial court's order makes no mention of how the deviation was in the child's best interest. *Hamlin*, 291 Ga. App. at 227 (2). As such, the order is insufficient, and we must remand the case for the trial court to include specific findings that support the deviation. *Jackson*, 333 Ga. App. at 556-557 (4).

---

[9] The trial court applied an additional deviation of $15.16 for dental and vision insurance. Spirnak does not challenge this deviation.

6. In two related enumerations of error, Spirnak argues that the trial court erred in awarding interest on the outstanding child support debt, and in how it calculated that interest. We agree.[10]

Whether a party is entitled to interest on outstanding child support payments is a matter committed to the discretion of the trial court. See *McCarthy v. Ashment*, 353 Ga. App. 270, 276 (5) (835 SE2d 745) (2019).

a. *Interest award*

Under OCGA § 7-4-12.1 (a),

[t]he court shall have discretion in applying or waiving past due interest. In determining whether to apply, waive, or reduce the amount of interest owed, the court *shall* consider whether: (1) Good cause existed for the nonpayment of the child support; (2) Payment of the interest would result in substantial and unreasonable hardship for the parent owing the interest; (3) Applying, waiving, or reducing the interest would enhance or detract from the parent's current ability to pay child support, including the consideration of the regularity of payments made for current child support of those dependents for whom support is owed;

---

[10] We reject Meadows's argument that Spirnak waived any challenge to the interest calculation. In closing argument, Spirnak's counsel acknowledged that the court could enter an order granting interest, but he argued that there was insufficient evidence under OCGA § 7-4-12.1. Therefore, he has preserved the arguments raised on appeal.

and (4) The waiver or reduction of interest would result in substantial and unreasonable hardship to the parent to whom interest is owed.

(Emphasis supplied.)

Thus, under the plain language of the statute, the trial court must consider four factors when deciding whether to apply or waive interest. See *McCarthy*, 353 Ga. App. at 276 (5) ("the trial court made several findings of fact regarding the financial circumstances of both parties and ordered [father] to pay the arrearage and interest on both child support and attorney fees. The trial court recognized its discretion to apply or waive past due interest, but declined to do so[.]").

Here, the trial court simply granted interest on the arrearage without any consideration of the four factors. Although generally "a judge is presumed to know the law and presumed to faithfully and lawfully perform his duties, . . . the assumption that a trial court has correctly applied the law is a theoretical one, and has no place where it affirmatively appears to the contrary." (Citations and punctuation omitted.) *GoldKist, Inc. v Moody*, 258 Ga. App. 486, 487 (1) (575 SE2d 509) (2002). Here, the trial court's order makes no mention of the factors and contains no findings with regard to them. Accordingly, we must vacate the award of interest, and remand the case for further factual findings. OCGA § 7-4-12.1(a).

23

b. *Calculation of interest*

Spirnak also challenges the calculations of the amount of interest. Because this issue may reoccur on remand, we take this opportunity to address it.

OCGA § 7-4-12.1 (a) provides that "monetary amounts shall accrue interest at the rate of 7 percent per annum commencing 30 days from the date such award, court order, decree, or judgment is entered or an installment payment is due, as applicable." OCGA § 7-4-12.1 (a). Here, the trial court ordered past due interest of $4,807.47, based on Meadows's calculations. But Meadows's methodology is incorrect because it calculates the seven percent monthly rather than annually.

Because Spirnak is ordered to pay monthly child support payments, the proper way to calculate the past interest due is on the monthly, not annual, basis. See, e.g., Jerry Reiss, Marc H. Brawer, *The Intersection of F.S. S55.03 and Florida Family Law: Statutory Interest Calculations for Past-Due Support Payments*, 87 Aug. FLBJ 54 (2013) ("For purposes of this simplified discussion, the monthly interest rate is the annual simple-interest rate divided by 12."); see also RJ Bronstein, *Legal Aspects of the Use of "Ordinary Simple Interest,"* 40 U. Chi. L. Rev. 141 (1972). Cf. *Noons v. Holiday Hospitality Franchising, Inc.*, 307 Ga. App. 351, 355 (3) (705 SE2d 166) (2010) (calculating interest rate each month). Accordingly, seven percent per annum

must be converted to a monthly interest rate. But that is not what it appears that Meadows - or the trial court - has done. Should the trial court determine on remand that past due interest ought to be applied, it should recalculate the amount due using the proper method as outlined above.

7. Spirnak also challenges the award of attorney fees, on the grounds that the trial court ordered a lump sum award; there was no evidentiary hearing on the amount of fees; and the amount awarded was not reasonable or proper under any code section. We conclude that the trial court's order is insufficient to support the award.

Notably, at the hearing, Spirnak did not challenge the reasonableness of the attorney fees and made no argument that fees were not warranted. *Neal*, 296 Ga. at 891 (12) (party waived issue of fees by not objecting during the hearing); *Taylor v. Taylor*, 293 Ga. 615, 618 (4), n.3 (748 SE2d 873) (2013) (party waived issue of reasonableness of fees by not objecting before the trial court). In fact, at no time during the two days hearing did he object to the evidence or make argument opposing fees.[11]

---

[11] Notably, the pre-trial order identifies attorney fees as one of the issues in dispute. Additionally, although the pre-trial order listed affidavits from the various attorneys as possible exhibits, it does not appear that these were admitted at the hearing. In her response brief, Meadows contends that the affidavit is in the record - but the affidavit in the record addresses only those fees related to the motion for

25

Although ordinarily we would conclude that Spirnak had waived his challenges to the fee award, recent cases from this Court have allowed challenges to the sufficiency of the evidence regardless of a timely objection. See *Winchell v. Winchell*, 352 Ga. App. 306, 310 (2), n.9 (835 SE2d 6) (2019); *Ford v. Ford*, 349 Ga. App. 45, 47 (2) (a) (825 SE2d 449) (2019) ("Where the party obtains the judgment without meeting the burden of proof, the opposing party may challenge the judgment on that ground, and in doing so may assert arguments not made to the trial court.") (physical precedent only).[12] Therefore, to the extent that Spirnak's argument could be read to challenge the *sufficiency* of the evidence, we will address it.

Here, the trial court's order cites to multiple statutes as the bases for awarding fees, but these statutes have different purposes, and different factors. Compare OCGA §§ 19-6-2 (awarding fees based on parties' financial circumstances to enable representation); 9-15-14 (awarding fees for being litigious, bringing a frivolous claim,

---

contempt. And those fees are not part of the motion for attorney fees at issue on appeal. Additionally, it is only from one of the many attorneys that represented Meadows during the case. There is nothing in the record to show that the affidavits were admitted at the final hearing.

[12] "[W]e do not apply a 'wrong for any reason' rule to reverse incorrect rulings on issues not raised or ruled upon in the trial court." (Citation omitted.) *Heard v. City of Villa Rica*, 306 Ga. App. 291, 293-294 (701 SE2d 915) (2010).

26

or expanding the litigation); 19-6-15 (k) (5) (awarding fees in petition to modify support "as the interests of justice may require"); and 19-9-3 (g) (except in cases of fees awarded due to financial circumstances, trial court may award reasonable attorney fees as determined by the judge). Additionally, although there was some testimony regarding the amount of fees paid, there is no mention in the trial court's order of the reasonableness of those hours or fees, nor is there any indication of which fees are attributable to which statutory provision. When we consider whether there was sufficient evidence to support the award, we are constrained to conclude that there was not. Accordingly, we must vacate the award of fees and remand the case to the trial court for further findings. See *Wilson v. Guerrero*, 353 Ga. App. 501, 502-503 (1) (838 SE2d 588, 590 (1)) (2020)

"Generally, an award of attorney fees is not available in Georgia unless authorized by statute or contract." (Citation omitted.) *Ward v. Ward*, 289 Ga. 250, 251 (2) (710 SE2d 555) (2011). We thus look to the various attorney fees provisions on which Meadows relied.

a. *OCGA § 19-6-2*

Under OCGA § 19-6-2 (a) (1),

27

[t]he grant of attorney's fees as a part of the expenses of litigation, made at any time during the pendency of the litigation, whether the action is for alimony, divorce and alimony, or contempt of court arising out of either an alimony case or a divorce and alimony case, including but not limited to contempt of court orders involving property division, child custody, and child visitation rights, shall be: (1) Within the sound discretion of the court, except that the court shall consider the financial circumstances of both parties as a part of its determination of the amount of attorney's fees, if any, to be allowed against either party.

But this case does not involve divorce and alimony; it is a petition for the modification of custody. As such, this statutory provision does not apply. *Viskup v. Viskup*, 291 Ga. 103, 107 (3) (727 SE2d 97) (2012); *Wilson*, 353 Ga. App. at 503 (1); *Moore v. Hullander*, 345 Ga. App. 568, 571 (2) (a) (814 SE2d 423) (2018) (section 19-6-2 does not apply to counterclaim for child support and contempt where original petition requested modification of custody). Thus, to the extent that the trial court awarded fees under OCGA § 19-6-2, the award cannot stand.

b. *OCGA § 19-9-3 (g)*

Under OCGA § 19-9-3 (g), the trial court may award reasonable attorney fees and expenses. But there is no evidence in the record about the attorneys' hourly rate or the number of hours expended, and thus we cannot determine whether there was

28

sufficient evidence to support an award under this statute. Moreover, the trial court's order repeatedly references Spirnak's trial tactics and litigation strategy, stating that his petition "lacked substantial justification and amounts to frivolous litigation," and that his conduct "unnecessarily increased litigation costs," which is language that appears in OCGA § 9-15-14 (b) rather than any of the child support statutes. Nothing in the trial court's order uses language appropriate to OCGA § 19-9-3 (g). Therefore, "we eliminate [it] as the basis of the award." *Viskup*, 291 Ga. at 106 (3). Even if this code section applied, the record is devoid of any evidence to show the reasonableness of the fees. See *Jackson*, 333 Ga. App. at 561-562 (6).

c. *OCGA § 19-6-15*

Under OCGA § 19-6-15 (k) (5),

[i]n proceedings for the modification of a child support award pursuant to the provisions of this Code section, the court may award attorney's fees, costs, and expenses of litigation to the prevailing party as the interests of justice may require. When a custodial parent prevails in an upward modification of child support based upon the noncustodial parent's failure to be available and willing to exercise court ordered visitation, reasonable and necessary attorney's fees and expenses of litigation *shall* be awarded to the custodial parent.

(Emphasis added.)

29

This statutory provision makes an award mandatory where the trial court imposes an upward modification in support due to the non-custodial parent's failure to exercise visitation. But, as noted above, nothing in the trial court's order indicates that the factual basis for the attorney fee award was due to the upward modification; instead, it appears that the award was based on Spirnak's failure to meet his burden for a downward modification and his lack of cooperation with the discovery process. As a result, nothing in the trial court's order supports an award of fees under this statute, although they are required where, as here, the trial court modifies the amount of support due to lack of visitation.

d. *OCGA § 9-15-14*

Under OCGA § 9-15-14 (a), the trial court shall award attorney fees "to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position." On the other hand,

> OCGA § 9-15-14 (b) authorizes a trial court to award reasonable attorney fees upon a finding that an action or any part thereof lacked substantial justification or that the action was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily

30

expanded the proceeding by other improper conduct. As used in this Code section, 'lacked substantial justification' means substantially frivolous, substantially groundless, or substantially vexatious. An award under this section must be supported by sufficient proof of the actual costs and the reasonableness of those costs. To permit meaningful appellate review of an award of fees and expenses, the trial court's order cannot be too vague and conclusory, such as where it fails to cite examples of conduct that authorize the award. The trial court need not cite specific testimony, argument of counsel, or any other specific factual reference in its order awarding fees under OCGA § 9-15-14; it is only required to specify the conduct upon which the award is made. Thus, when awarding attorney fees under OCGA § 9-15-14 (b), the trial court must limit the fees award to those fees incurred because of the sanctionable conduct. As we have explained, lump sum or unapportioned attorney fees awards are not permitted in Georgia, and we will vacate and remand for further factfinding where the trial court's order, on its face, fails to show the complex decision making process necessarily involved in reaching a particular dollar figure and fails to articulate why the court awarded one amount of fees rather than another under OCGA § 9-15-14 (b).

(Citations, punctuation, and emphasis omitted.) *Reid v. Reid*, 348 Ga. App. 550, 553-554 (2) (823 SE2d 860) (2019). Generally, "an order awarding attorney fees pursuant to this statute must specifically state whether the award is made under OCGA § 9-15-14 (a) or (b)." (Citations and punctuation omitted.) *Woods v. Hall*, 315 Ga. App.

93, 97 (2) (726 SE2d 596) (2012). Here, the trial court's order does not specify which subsection, but the language in the order demonstrates that the trial court was focused on an award under subsection (b). We thus consider whether the order is sufficient to support an award under subsection (b). *Reid*, 348 Ga. App. at 554 (2). We are constrained to conclude that it is not.

There is no evidence in the record to support the amount of fees requested, and nothing in the trial court's order explains how the fees relate to the sanctionable conduct. Moreover, lump sum awards such as this are not permitted under OCGA § 9-15-14. *Reid*, 348 Ga. App. at 554 (2). Additionally, there is no evidence to show the fees were reasonable. Accordingly, to the extent that the trial court awarded fees under this statute, we must vacate and remand for further factual findings. Id. at 555 (2). See also *Hardman v. Hardman*, 295 Ga. 732, 740 (4) (763 SE2d 861) (2014) (vacating and remanding an award under OCGA § 9-15-14 (b) because the trial court did not allocate any portion of the award to the fees incurred in litigating the aspect of the case that lacked substantial justification); *Moore*, 345 Ga. App. at 573 (2) (c); *Fedina v. Larichev*, 322 Ga. App. 76, 81 (5) (744 SE2d 72) (2013) (vacating sanctions award under OCGA § 9-15-14 (b) where trial court failed to show that it limited its award to fees resulting from party's sanctionable conduct).

Accordingly, we conclude that we must remand the award of fees for additional factual findings under OCGA §§ 9-15-14 and 19-6-15 (k) (5).

8. Finally, Spirnak challenges the trial court's adoption of Meadows's proposed order because it contains inflammatory and prejudicial language. We discern no error.

We note that the trial court invited both parties to submit proposed orders, although there is no indication in the record of any order submitted by Spirnak. We have repeatedly held that a trial court's adoption of a party's proposed order does not constitute an abuse of discretion. *Resource Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 739 (5) (698 SE2d 19) (2010); see also *Fuller v. Fuller*, 279 Ga. 805, 806 (1) (621 SE2d 419) (2005) ("Even when a trial court adopts a proposed order verbatim, the findings of fact therein are those of the court and may be reversed only if they are clearly erroneous") (citations omitted); *Phillips v. Drake*, 215 Ga. App. 210, 211 (2) (449 SE2d 879) (1994) ("as long as the order of the court is supported by evidence, in the absence of evidence that the court did not seriously consider proposed findings and conclusions of law presented to it, no error results even if a proposed order is adopted verbatim.") (citation omitted).

To the extent that Spirnak objects to the "spiteful, malicious, highly prejudicial, and inflammatory" language in the order, our review of the record shows that there

33

is evidentiary support for each factual assertion, and, as a trial court must make factual findings to support its legal conclusions, these factual matters are properly included in the order.[13] Accordingly, this claim of error is without merit. Nevertheless, we take this opportunity to remind parties of the obligation to draft a complete and thorough order for the trial court's review. Had the parties done so in this case, they could have avoided the necessity of remand in this case.

In summary, we affirm the trial court's final parenting plan and the order denying Spirnak's petition to modify child support. We vacate the trial court's award of a parenting time deviation, interest, and attorney fees, and we remand the case for further factual findings to support the trial court's order on these issues. We also remand the case for correction of a scrivener's error in the payment of child support.

*Judgment affirmed in part; vacated in part; and case remanded with direction.*

*Reese, P. J., and Colvin, J., concur.*

---

[13] With regard to Spirnak's request that the final order be sealed, he has not made a motion to do so, and we will not consider a single reference in the body of his brief as a motion. See Court of Appeals Rules 18 (d), 41 (b).